[Cite as *State v. Dinka*, 2015-Ohio-63.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO.   CA2014-01-002 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>1/12/2014 |
| - vs - | : | |
| | : | |
| JOHN DINKA, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13CR29379

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Bryan Scott Hicks, P.O. Box 359, Lebanon, Ohio 45036, for defendant-appellant

**M. POWELL, J.**

{¶ 1}   Defendant-appellant, John Dinka, appeals from his conviction in the Warren County Court of Common Pleas for two counts of violation of a civil protection order and one count of menacing by stalking.  For the reasons detailed below, we affirm.

{¶ 2}   At the time of the charges in this case, appellant and Barbara Howard had been together as boyfriend and girlfriend for a period of about two years and appellant had been living in Howard's home for approximately one year.  During this time, the couple had a child

together. Appellant and Howard had a tumultuous relationship that involved numerous incidents of physical and emotional abuse of Howard by appellant.

**{¶ 3}** On August 1, 2013, deputies with the Warren County Sheriff's Office were dispatched to Howard's residence in response to an incident of domestic violence. Howard alleged that, while she was asleep in bed, appellant kicked her in the back and when she confronted him, appellant got out of bed, pulled down his underpants, and attempted to urinate in Howard's purse. Thereafter, Howard alleged that appellant would not let her leave the house with her four-month-old child. Appellant was subsequently arrested on charges of domestic violence.

**{¶ 4}** On August 6, 2013, Howard obtained a Civil Protection Order (CPO) against appellant while he was incarcerated in the county jail. Appellant was served with the CPO the same day and instructed that he was to have no contact with Howard. Despite the CPO, appellant called Howard's cell phone from the county jail approximately seven times from August 6 through August 7. Howard subsequently informed Warren County Sheriff's Deputies that appellant was violating the terms of the CPO.

**{¶ 5}** On September 3, 2013, appellant was indicted on four counts, including: one count of domestic violence in violation of R.C. 2919.25(A), two counts of violation of a protection order in violation of R.C. 2919.27(A)(1), and one count of menacing by stalking in violation of R.C. 2903.211(A)(1).

**{¶ 6}** The case proceeded to a jury trial on October 17, 2013. At the end of the two-day trial, a jury found appellant guilty of two counts of violating a civil protection order and one count of menacing by stalking. The jury found appellant not guilty of domestic violence. The trial court sentenced appellant to 12 months in prison. Appellant now appeals, raising two assignments of error for review.

**{¶ 7}** Assignment of Error No. 1:

{¶ 8} THE DEFENDANT WAS IMPROPERLY CONVICTED OF VIOLATING A PROTECTION ORDER.

{¶ 9} In his first assignment of error, appellant claims that his conviction for violating a protection order was improper. We construe appellant's first assignment of error as a challenge to the sufficiency of the evidence, as well as an argument that his conviction is against the manifest weight of the evidence.

{¶ 10} The legal concepts of sufficiency of the evidence and weight of the evidence are separate and distinct. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. Accordingly, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Henry*, 12th Dist. Clermont Nos. CA2013-12-095 and CA2013-12-097, 2014-Ohio-4624, ¶ 16.

{¶ 11} On the other hand, "a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Johnson*, 12th Dist. Fayette No. CA2013-04-012, 2014-Ohio-1694, ¶ 19. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 17. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment on

the weight of the evidence in a jury trial. *Johnson* at ¶ 19.

{¶ 12} Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 66. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*

{¶ 13} R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section * * * 2919.26 or 3113.31 of the Revised Code." In the present case, the CPO issued against appellant and in favor of Howard was introduced into evidence at trial. That CPO included a provision which prohibited appellant from initiating contact with Howard. Specifically, the pertinent provision of the CPO provides:

> DEFENDANT SHALL NOT INITIATE OR HAVE CONTACT with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or child care providers. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any means in person or through another person. Defendant may not violate this order even with the permission of a protected person.

{¶ 14} On appeal, appellant does not dispute the fact that he made approximately seven phone calls to Howard following the issuance of the CPO on August 6 and August 7. Instead, appellant argues that his conduct did not violate the conditions of the CPO because Howard did not accept the phone calls. In essence, appellant contends that he did not violate the terms of the CPO because he did not actually "communicate" with Howard.

{¶ 15} After reviewing the record, we find appellant's conviction was not against the weight of the evidence and was therefore supported by sufficient evidence. Appellant's arguments to the contrary are without merit. The CPO at issue prohibits appellant from

contacting or *initiating* contact with Howard. Appellant's repeated attempts to telephone Howard clearly satisfies the fact that appellant was initiating contact. *See, e.g., State v. Leason*, 9th Dist. Summit No. 25566, 2011-Ohio-6591, ¶ 28 (defendant attempted to initiate contact with the protected party from a jailhouse phone). As such, the state presented sufficient evidence from which the trier of fact could reasonably conclude that appellant was guilty of violating a protection order. Accordingly, appellant's first assignment of error is without merit.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 18} In his second assignment of error, appellant argues that his conviction for menacing by stalking was against the manifest weight of the evidence.

{¶ 19} In the present case, appellant was convicted of menacing by stalking, a fourth-degree felony. Menacing by stalking is defined under R.C. 2903.211(A)(1), which provides, in pertinent part:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.

Menacing by stalking is a fourth degree felony when "[t]he offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person."

{¶ 20} In prosecutions for menacing by stalking, the victim's belief that the defendant will cause physical harm is an element of the offense which is often intertwined with their past interactions. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 12. As a result, prior acts of violence between the defendant and the victim are "relevant and highly probative in establishing the victim's belief of impending serious harm," and are "particularly

important to prove the crime of menacing by stalking." *Id.*, citing *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 26.

{¶ 21} During trial, the state elicited testimony from Howard regarding several instances of appellant's prior violent acts and inappropriate conduct, including a prior conviction for domestic violence in 2013. The conviction stemmed from a January 9, 2013 incident between appellant and Howard's daughter, Shelby Howard, where appellant threatened Shelby and her boyfriend with a shotgun.

{¶ 22} However, following appellant's trial and conviction for the charges involved in the present case, this court reversed appellant's 2013 domestic violence conviction on the basis that appellant was denied his right to counsel. We remanded the matter for further proceedings where appellant "must be afforded a new trial wherein he is to be represented by counsel, unless he makes a knowing and voluntary waiver thereof." *State v. Dinka*, 12th Dist. Warren No. CA2013-03-021, 2013-Ohio-4646, ¶ 28-29.

{¶ 23} Based on that reversal, appellant now contends that his conviction for menacing by stalking is against the manifest weight of the evidence because the evidence of his 2013 domestic violence conviction was "by far the most serious and frightening" and caused the jury to lose its way in determining guilt.

{¶ 24} After review, we find no merit to appellant's argument. First, the menacing by stalking statute does not require that the pattern of conduct consist of convictions. Rather, the statute emphasizes prior acts indicating a pattern of violent conduct. As this court has previously observed, even "otherwise innocent appearing acts, when put into the context of previous contacts * * * may be knowing attempts to cause mental distress." *Horsley*, 2006-Ohio-1208 at ¶ 26; *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 23 ("state need only show that a defendant knowingly caused the victim to believe that he would cause her mental distress or physical harm.") Accordingly, there is no

evidence that the acts involved in the 2013 domestic violence conviction would be excluded even though appellant's actual conviction was overturned. In addition, we also note that appellant's 2013 conviction for domestic violence was not reversed on the basis that the evidence against appellant was insufficient or against the manifest weight of the evidence. Instead, this court reversed appellant's conviction based on a procedural irregularity. In other words, this court's reversal was not akin to a finding that appellant did not engage in the violent conduct and therefore appellant has not demonstrated any prejudice.

{¶ 25} Moreover, appellant's 2013 conviction for domestic violence was only one of several instances that Howard testified about that established a pattern of violent conduct. Other evidence in the record established appellant's violent history and abusive tendencies. Specifically, Howard testified that appellant had broken mirrors in her bathroom vanity, he had kicked and broken Howard's kitchen cabinet, damaged a bedroom door by throwing a television remote, dumped cans of soda on Howard's head, and surreptitiously placed raw chicken livers on the engine of Howard's automobile following an argument.

{¶ 26} Howard further explained that on one occasion, appellant became enraged with Howard after he discovered that someone had eaten his Fruity Pebbles cereal. After learning that the Fruity Pebbles cereal was gone, Howard stated that appellant threw his cereal bowl causing the bowl to shatter. Thereafter, Howard left the room and called appellant a "psycho." Not wanting to end the argument there, appellant said "I'll show you psycho" and took a box cutter and began cutting large slices into the carpet in the living room. Photographs of the destroyed carpet were entered as exhibits in the record.

{¶ 27} Based on the evidence presented at trial, we conclude the jury's verdict was not against the manifest weight of the evidence. This case came down to the credibility of the witness testimonies. Although appellant denied any wrongdoing and attempted to minimize his prior violent acts, the state presented overwhelming evidence to the contrary. The jury,

as trier of fact, was in the best position to judge the credibility of the witnesses. The evidence produced at trial indicates that a rational jury could have found beyond a reasonable doubt that appellant knowingly caused Howard to believe that he would cause her physical harm or mental distress. As such, appellant's second assignment of error is without merit.

{¶ 28} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.